UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JUAN LOPEZ,**

    **Petitioner,**

**-vs-**                                              Case No.  8:12-CV-44-T-27TBM

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

## ORDER

Petitioner, an inmate of the Florida penal system proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") challenging convictions for two counts of first-degree murder entered in 2004 by the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1).  Respondent filed a response to the petition (Dkt. 8), and Petitioner filed a reply (Dkt. 13). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

On November 29, 1995, Petitioner was charged by Indictment with two counts of first-degree murder (Resp. Ex. 1).  A jury convicted Petitioner on both counts (Resp. Ex. 2, Vol. 19, pp. 657-58). Petitioner was sentenced to consecutive life terms in prison, without the possibility of parole (Resp. Ex. 3, p. 15).  The state appellate court affirmed (Resp. Ex. 8); *Lopez v. State*, 2004 Fla. App. LEXIS 17453 (Fla. 2d DCA Nov. 17, 2004).

In July 2005, Petitioner filed a state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel (Resp. Ex. 9).  The petition was denied by the Florida Second District Court of Appeal in August 2005 (Resp. Ex. 10).

In October 2005, Petitioner filed a Motion for Post Conviction Relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 alleging ineffective assistance of trial counsel (Resp. Ex. 13). The state post conviction court denied the 3.850 motion in July 2011 (Resp. Ex. 14). Petitioner did not appeal the denial of his 3.850 motion.

On January 5, 2012, Petitioner filed the instant federal habeas petition in this court (Dkt. 1).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues- must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). "Under § 2254(d), a habeas court must determine what arguments or theories supported. . .the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Wetzel v. Lambert*, 132 S.Ct. 1195, 1198 (2012) (citing *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part

2

test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id*. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

The standard of proof and review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. *Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353

F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting

4

his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

**Ground One**

Petitioner contends that the state trial court's removal of four prospective jurors on the basis that they could not sufficiently speak and understand English violated his constitutional right to a jury comprised of a fair cross-section of the community. He argues that there was no "lawful basis"

5

to exclude the four prospective jurors.

Petitioner raised this claim in his Initial Brief on direct appeal (Resp. Ex. 5, pp. 6-22).  The appellate court affirmed Petitioner's conviction without a written opinion (Resp. Ex. 8).  Petitioner has failed to carry his burden of proving that the appellate court's decision denying this claim was contrary to controlling Supreme Court precedent or based on an unreasonable determination of the facts.

"The Sixth Amendment guarantees a criminal defendant the right to be tried by a jury 'drawn from a fair cross-section of the community.'"  *United States v. Baptiste*, 388 Fed. Appx. 876, 882 (11th Cir. 2010) (unpublished) (quoting *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995).  In order to prove a violation of the fair cross-section requirement, Petitioner must prove:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires  from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979)).  Petitioner has based this claim upon the exclusion of four Asian potential jurors during his jury selection process over objections from counsel.  Because Petitioner has not alleged or produced any evidence showing the entire system resulted in under-representation of Asians, this claim fails on the merits.  *See Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) (While "petit juries must be drawn from a source fairly representative of the community … [there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, … but the jury wheels, pools of names, panels, or venires from which juries are drawn

must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.") (internal citations omitted).

To the extent Petitioner argues that his rights were violated because there was no valid basis to exclude the four potential jurors, his claim likewise fails. The trial court determined that four Asian potential jurors (Wu, Butcher, Beattie, and Lai) should be excused for cause because "[t]hey can't speak English well enough." (Resp. Ex. 2, Vol. 2 at trial transcript pp. 121, 134). Defense counsel "agree[d] with the Court that none of them ha[d] sufficient English to serve as a juror." (Id. at 134). Nevertheless, defense counsel argued that in light of Petitioner's right to a jury comprised of a fair cross-section of the community, it was incumbent upon the trial court to stop the proceedings and secure interpreters for the potential jurors (Id. at pp. 119-21; 134-35).[1] The trial judge stated that he was not stopping the proceedings to attempt to obtain interpreters for the potential jurors, and excused them for cause (Id.).

In federal court, "[a] juror that is unable to read, write, speak, and understand English may be appropriately stricken for cause." *United States v. Pineda*, 743 F.3d 213, 217 (7th Cir. 2014) (citing *United States v. De La Paz-Rentas*, 613 F.3d 18, 24 (1st Cir. 2010) (upholding the constitutionality of the requirement [under 28 U.S.C. § 1865] that individuals understand and be literate in English to serve on a federal jury)). *See also United States v. Rouco*, 765 F.2d 983, 988 n.3 (11th Cir. 1985) (" The Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1877 (1982), provides that a person shall not be deemed qualified for service on a grand or petit jury unless he or she is able 'to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form . . . [or] is []able to speak the English

---

[1]Defense counsel opined that "we'd need Mandarin Chinese, Thai and Vietnamese" interpreters (Id. at 120).

language.'") (citing 28 U.S.C. § 1865(b) (1982)). In Florida, a "juror can be excluded based on his or her inability to understand English." *Pagan v. State*, 29 So. 3d 938, 958 (Fla. 2009) (citing *Cook v. State*, 542 So. 2d 964, 970 (Fla. 1989) ("It is the ability to understand English rather than to speak it perfectly which is important.")).

It is apparent from the record that the trial judge, prosecutor, and defense counsel all agreed that the four prospective jurors could not sufficiently understand English (Resp. Ex. 2, Vol. 2 at trial transcript pp. 121, 133-35). Petitioner has not presented any evidence to the contrary. Therefore, he has failed to establish that either his right to due process or equal protection was violated when the trial court excused those four prospective jurors for cause. Moreover, Petitioner has not referred to, and the Court is not aware of, any cases of the United States Supreme Court holding that a state defendant has a constitutional right in a criminal case to have the state court provide interpreters for prospective jurors with difficulty understanding the English language.

Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two**

Petitioner contends that the trial court erred in denying his motion for a mistrial that was based on the State's failure to produce evidence promised during opening statements, namely, an inculpatory statement made by Petitioner to Kimberly Ally that he kept shooting one of the victims because "he could not get him to die." He argues that because Ally did not testify that Petitioner had made the statement, the denial of his motion for mistrial violated his rights to due process, a fair trial, and to confront the witnesses against him.

In state court Petitioner raised this issue on direct appeal (Resp. Ex. 5 at 22-28). The Second District Court of Appeal affirmed Petitioner's convictions without written opinion (Resp. Ex. 8).

> During his opening statement, the prosecutor said, in pertinent part, that:
>
> Anthony Lopez explains to Kimberly Ally that he sees the man crawling on the floor. And she will describe how Anthony Lopez explains what happens next. That he was moving, pop, pop, pop. Anthony Lopez tells Kimberly Ally he could not get the man to die. That's when he went up an shot him in the head.

(Resp. Ex. 2 at Vol. 15, pp. 46-47).

Ally did not testify that Lopez told her that "he could not get the man to die." (Id. at Vol. 18, pp. 451-73). She did, however, testify that Lopez told her that "[he] and Mikey had robbed a place and that they had killed a couple people." (Id. at p. 462). She also testified that Lopez told her that he had a pistol (Id. at p. 463), and that after "Mikey" had shot the two victims with a shotgun and ran out of shotgun shells, Lopez shot the woman in the head, then shot the man in the head as he was crawling (Id. at p. 465-66). Ally testified that when Lopez was describing to her how he shot the man, he said "pop, pop, pop." (Id. at p. 466).

The Eleventh Circuit "condemns the practice whereby a prosecutor refers to evidence in opening statement that the prosecutor never intends to introduce or reasonably knows cannot be introduced at trial." *United States v. Chirinos*, 112 F.3d 1089, 1098-99 (11th Cir. 1997), *cert. denied*, 522 U.S. 1052 (1998). There is no indication, however, that the prosecutor in Petitioner's trial knew that Ally would not testify that Petitioner told her that "he could not get the man to die." Moreover, even if the prosecutor reasonably knew that Ally would not make that statement, the Eleventh Circuit has stated that it will reverse a conviction based on prosecutorial misconduct only where the remarks were improper and prejudiced the defendant. *United States v. O'Keefe*, 461 F.3d 1338, 1350 (11th Cir. 2006), *cert. denied*, 549 U.S. 1232, 127 S. Ct. 1308, 167 L. Ed. 2d 120 (2007). Therefore, to grant relief on this claim, the Court would have to conclude that but for the

9

prosecutor's remark, the outcome of the trial would be different. *Id*. ("A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the prosecutor's statements, the outcome of the trial would have been different.") (citation omitted).

Given the strength of the evidence of Petitioner's guilt, the Court concludes that the outcome of the trial would not have been different but for the prosecutor's single statement. The trial judge instructed the jury that the attorneys' statements were not evidence and not to be considered by the jury as evidence (Resp. Ex. 2, Vol. 4 at trial transcript pp. 407-08). "[J]urors are presumed to follow the court's instructions." *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001), *cert. denied*, 534 U.S. 1085 (2002) (citations omitted). Moreover, Ally and other witnesses testified that Petitioner made several inculpatory statements that were equally as prejudicial as the "he could not get the man to die" statement.[2] The statement therefore, when considered in the context of the entire trial, did not render the trial fundamentally unfair. *See Land v. Allen*, 573 F.3d 1211, 1220 (11th Cir. 2009) (finding that prosecutor's improper conduct did not render the trial fundamentally unfair).

Finally, to the extent Petitioner argues that his Sixth Amendment rights were violated because he was unable to confront and cross examine Ally concerning the statement, the argument likewise fails. "The Sixth Amendment protects a criminal defendant's right to confront the witnesses against him." *United States v. Baptiste*, 2015 U.S. App. LEXIS 342, at *4 (11th Cir. Jan. 9, 2015) (unpublished) (citing U.S. Const. amend VI). Here, Ally testified at trial and defense counsel had a full opportunity to cross-examine her (Resp. Ex. 2, Vol. 18, pp. 469-73). Petitioner does not allege nor does the record indicate that defense counsel attempted to cross-examine Ally

---

[2]For example, Cynthia Lambert, Petitioner's girlfriend at the time of the murders, testified that Petitioner told her that he shot the victims, and in doing so used all the bullets in his gun (Resp. Ex. 2, Vol. 17 at pp. 400-01).

about the "he could not get the man to die" statement, but the trial court prevented defense counsel from doing so. Petitioner therefore has failed to show that a violation of the Confrontation Clause occurred. *Cf. United States v. Valdez-Soto*, 31 F.3d 1467, 1470 (9th Cir. 1994) ("We are aware of no Supreme Court case, or any other case, which holds that introduction of hearsay evidence can violate the Confrontation Clause where the putative declarant is in court, and the defendants are able to cross-examine him.").

The state appellate court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts. Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

Petitioner contends that appellate counsel was ineffective, during direct appeal, in failing to raise the issue that the trial court committed fundamental error in failing to *sua sponte* excuse juror Knight for cause because it was apparent that Knight was biased against Petitioner.[3] Petitioner argues that Knight was biased against him because during voire dire Knight disclosed that: 1) his brother had been shot 25 years ago, and the shooter had never been criminally charged; 2) he believed guns were "taboo," and people should not have them; and 3) the allegation that Petitioner used a gun was a "problem" for him.

---

[3]Because trial counsel did not object to Knight serving on the jury, the issue was not preserved for appeal. Consequently, the standard of review on direct appeal would have been fundamental error. *See F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003) ("The sole exception to the contemporaneous objection rule applies where the error is fundamental."); Section 924.051(3), Florida Statutes ("An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review of the complete record that prejudicial error occurred and was properly preserved in the trial court or, if not properly preserved, would constitute fundamental error.").

Petitioner raised this claim as Argument One in his state petition for a writ of habeas corpus (Resp. Ex. 9 at pp. 3-5). The Florida Second District Court of Appeal denied Petitioner's petition on the merits without written opinion (Resp. Ex. 10).

The Second District Court of Appeals summary denial of this claim was a reasonable application of *Strickland* because Petitioner cannot show that he was prejudiced by appellate counsel's failure to raise an issue that would not change the outcome of the appeal. *See Clark v. Crosby*, 335 F.3d 1303, 1312 n.9 (11th Cir. 2003) ("In the context of an ineffective assistance of appellate counsel claim, 'prejudice' refers to the reasonable probability that the outcome of the appeal would have been different."). The outcome of the appeal would not have changed had appellate counsel presented the issue because under Florida law, "where a defendant alleges that a trial court erred in failing to excuse a juror, reversible error will not be found unless the defendant establishes that 'all peremptories had been exhausted and that an objectionable juror had to be accepted.'" *Thompson v. State*, 796 So. 2d 511, 521 (Fla. 2001) (quoting *Pentecost v. State*, 545 So. 2d 861, 863 n.1 (Fla. 1989)). Petitioner has failed to allege or establish that he had exhausted his peremptory challenges at the time Knight was presented to him for acceptance or rejection. And it is apparent from the record that defense counsel had unused peremptory challenges at that time (Resp. Ex. 2, Vol. 4 at trial transcript pp. 397-401).[4]

To the extent Petitioner's claim may be liberally construed as asserting that appellate counsel was ineffective in failing to raise the issue that Knight's bias deprived Petitioner a fair trial under the

---

[4] Because Petitioner's first-degree murder offenses were punishable by death or life in prison, under Florida law he was entitled to ten (10) peremptory challenges. *See Busby v. State*, 894 So. 2d 88, 99 (Fla. 2004) (" Each side is permitted ten peremptory challenges if the offense is punishable by death or life in prison. . . .") (citing Section 913.08(1), Fla. Stat. (2003)). Defense counsel used three of ten peremptory challenges (Resp. Ex. 2, Vol. 4 at trial transcript pp. 397-401).

Sixth Amendment, the claim likewise fails. To establish the prejudice prong of *Strickland*, Petitioner must show that, but for appellate counsel's failure to raise this claim on direct appeal, the result of his appeal would have been different. *Strickland*, 466 U.S. at 694. Petitioner has not shown that the result of the appeal would have been different had appellate counsel raised this claim.

In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State*, 28 So. 3d 838, 859 (Fla. 2009) (citing *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)). *See also, Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."). Petitioner has not demonstrated that Knight was actually biased against him and could not lay aside his bias against guns and render a verdict solely on the evidence and law.

Knight stated that he had a brother that was accidently shot by a friend approximately twenty-five years ago (Resp. Ex. 2, Vol. 2 at pp. 97-98). Although the friend was not criminally charged, Knight believed that he should have been charged (Id. at p. 98). When asked if he thought that experience "will have an impact on your ability to serve as a juror in this case[,]" Knight responded "yes." (Id. at pp. 98-99). When asked why he felt that way, Knight responded "I feel guns are taboo; people aren't supposed to have them." (Id. at p. 99). When asked "[s]o just hearing the allegation of a firearm being used in this case you think is going to cause you a problem[,]" Knight answered "yes." (Id.). Subsequently, however, when the prosecutor asked "[c]an you leave your strong

13

feelings about guns outside the courtroom and hold it, cherish it if you want, but follow the law given to you by Judge Federico so that a miscarriage of justice will not occur in this case[,]" Knight answered "Yes, sir." (Resp. Ex. 2, Vol. 3, at p. 253).

Petitioner has not alleged the existence of any evidence, other than the transcript of voir dire, showing that Knight was actually biased against him, and could not lay aside any bias or prejudice he had against guns and render a verdict solely on the evidence and law. It is therefore likely that even if appellate counsel had raised this claim on appeal, it would not have changed the outcome. Therefore, Petitioner has failed to demonstrate that he was prejudiced by appellate counsel not raising this claim on appeal.

Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

Petitioner contends that appellate counsel was ineffective in failing to raise on direct appeal that the trial court abused its discretion in denying defense counsel's motion to strike the entire jury venire based on potential juror Geraldine Rouse's comment that:

> The only thing that concerns me is being on the grand jury and knowing the experience of the state attorney's office and the diligence that they apply to what they do to be sure they have enough evidence to come to a conclusion of a charge of first-degree murder.

(See Resp. Ex. 2, Vol. 2 at trial transcript p. 2). Petitioner argues that the comment bolstered the credibility of the State Attorney's Office, and tainted the entire jury venire in favor of the State.

Petitioner raised this claim as Argument Two in his state petition for a writ of habeas corpus (Resp. Ex. 9 at pp. 6-7). The Florida Second District Court of Appeal denied Petitioner's petition on the merits without written opinion (Resp. Ex. 10).

The Second District Court of Appeals summary denial of this claim was a reasonable application of *Strickland* because Petitioner cannot show that he was prejudiced by appellate counsel's failure to raise an issue that would not change the outcome of the appeal. *See Clark v. Crosby*, 335 F.3d at 1312 n.9. The outcome of the appeal would not have changed had appellate counsel presented the issue because Petitioner has failed to demonstrate that the trial court abused its discretion in denying defense counsel's motion to quash the entire jury panel. *See Bauta v. State*, 698 So. 2d 860, 862 (Fla. 3d DCA 1997) ("'It is within the discretion of the trial court to determine whether remarks made by veniremen during the examination of the panel are prejudicial; and the trial court's decision not to quash the panel will not be disturbed absent an abuse of that discretion.'") (quoting *State v. Davis*, 806 S.W.2d 441, 443 (Mo. Ct. App. 1991)).

In Florida, "[d]iscretion is abused only 'when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court.'" *Trease v. State*, 768 So. 2d 1050, 1053 (Fla. 2000) (quoting *Huff v. State*, 569 So. 2d 1247, 1249 (Fla. 1990)). It is apparent from the record that the trial court's decision not to quash the jury panel was not "arbitrary, fanciful, or unreasonable." Rather, the trial court thoughtfully denied defense counsel's motion to strike the jury panel, reasoning that there were other comments made by other prospective jurors that were unfavorable toward law enforcement, and that in general the jury panel "is able to understand[,]" "can take things tongue in cheek[,]" and "is a responsive group and they've demonstrated that they understand sarcasm when it's provided to them. . . ." (Resp. Ex. 2, Vol. 2 at trial transcript pp. 114-16). It is therefore likely that even if appellate counsel had raised this claim on appeal, it would not have changed the outcome.

To the extent Petitioner's claim may be liberally construed as asserting that appellate counsel was ineffective in failing to argue that Petitioner was denied a fair trial because the jury was impartial as a result of Ms. Rouse's statements, the claim likewise fails. The Sixth Amendment guarantees the accused a "trial, by an impartial jury . . ." in federal criminal prosecutions. U.S. Const. amend VI. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

The record does not indicate that the jury was impartial or that any juror was influenced in any way by Ms. Rouse's brief statement. Nor has Petitioner produced any evidence indicating that the jurors were tainted by the statement. Because Petitioner has failed to show that Rouse's statement tainted the jury venire, he cannot show that the jury was not impartial, and he was denied a fair trial. Therefore, Petitioner has failed to demonstrate that he was prejudiced by appellate counsel not raising this claim on appeal. *See, e.g., Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) (a jury pool was not tainted by a spectator telling a prospective juror she thought a defendant was guilty).

In sum, this Court cannot find that the Florida Second District Court of Appeals' denial of this claim was contrary to *Strickland*. Accordingly, Ground Four does not warrant federal habeas relief.

**Grounds Five and Six**

In Ground Five, Petitioner contends that trial counsel was ineffective in failing to use a cause or peremptory challenge to remove Juror Knight. In Ground Six, Petitioner complains that trial counsel was ineffective in failing to challenge jurors Blackburn and Day for cause. Respondent

argues that these claims are unexhausted and now procedurally defaulted because although Petitioner raised them in his Rule 3.850 motion, he did not appeal the order denying his Rule 3.850 motion (see Dkt. 32-36). The Court agrees.[5]

Before presenting federal constitutional claims to a federal court in a habeas petition, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Florida, exhaustion requires not only the filing of a post conviction motion, but an appeal from its denial. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (11th Cir. 1979). Petitioner did not appeal the denial of his Rule 3.850 motion. Therefore, the claims raised in Grounds Five and Six are unexhausted. And, because Petitioner may not now return to state court to appeal the denial of his Rule 3.850 motion, the claims are procedurally defaulted.[6]

Petitioner has not overcome this procedural default by showing cause and prejudice, or a fundamental miscarriage of justice. Consequently, Grounds Five and Six are procedurally barred from review and therefore do not warrant federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

---

[5] Petitioner concedes that these claims are unexhausted (see Dkt. 13 at pp. 11-13).

[6] See Fla. R. App. P. 9.110(b) (appellate court's jurisdiction of appeal proceedings to review final orders of lower tribunals shall be invoked by filing an original and one copy of a notice with clerk of lower tribunal within 30 days of rendition of order to be reviewed).

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). Id. Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." Id.; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack*, 529 U.S. at 484, or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because he has not demonstrated that reasonable jurists would find debatable whether the procedural determination that his claims were procedurally defaulted was correct, or whether the petition stated a substantial denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on February 5th, 2015.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
        Counsel of Record